## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

JOHN NORMAN                                    CIVIL ACTION

VERSUS                                         NO.  06-2008

BURL CAIN, WARDEN                              SECTION "I"(2)


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to

conduct hearings, including an evidentiary hearing if necessary, and to submit proposed

findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and

(C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon

review of the entire record, I have determined that a federal evidentiary hearing is

unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated
determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when
the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that
was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could
not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the
facts underlying the claim show by clear and convincing evidence that, but for the constitutional error,
no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, John Norman, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Norman was charged by bill of information in Jefferson Parish on January 19, 2000, with the attempted second degree murder of a sheriff's deputy, attempted armed robbery, and as a felon in possession of a weapon.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> This case arises out of an incident that occurred on December 16, 1999.  On that day, Deputy David Randall, in an undercover capacity, patrolled various areas of the Westbank, in an attempt to purchase narcotics.  While in the Tallowtree subdivision in Harvey, Deputy Randall approached a black male and asked the man if he had "three twenties," meaning three rocks of crack cocaine.  The subject, later identified as defendant, John Norman, told Randall that he would have to pay for the narcotics first.  Randall refused to pay in advance and departed the area.
>
> Randall continued to drive around the subdivision in an attempt to make other narcotics purchases.  After another unsuccessful try, Randall decided to leave the area.  However, he then observed three black males who signaled him to approach.  Randall drove closer to the men, one of whom told him to wait there.  Defendant, who was in the group of three, approached the driver's side window of Randall's car and asked him if he was a police officer.  Randall responded that he was not.  Defendant raised his left hand as if he were going to hand Randall something.  Defendant said, "Give me the money."  Randall did not intend to give defendant any money until he had seen the narcotics.  The deputy put out his right hand to receive the three pieces of crack he believed defendant had in his left hand.  However, defendant quickly reached into the back of his waistband with his right hand and produced a gun.  He pointed the gun directly at

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 4, Indictment, 6/12/97.

Randall and told him to get out of the vehicle.  Although defendant did not demand money after he brandished the gun, Randall surmised from his prior statements that he wanted the money.  Randall threw his sixty dollars out of the window and quickly drove away.  As Randall drove away, he saw defendant picking up the money he had thrown from his vehicle.  Later that evening, Randall identified defendant in a photographic lineup as the man who had pointed the gun at him.  Defendant was subsequently arrested.

State v. Norman, 848 So.2d 91, 92 (La. App. 5th Cir. 2003); State Record Volume 3 of 8, Fifth Circuit Opinion, 03-KA-248, pp.2-3, May 28, 2003.

On February 7, 2000, the State amended the second count of the bill of information to charge armed robbery.[4]  Norman thereafter changed his plea to not guilty and not guilty by reason of insanity.[5]  After receiving a psychiatric report at a hearing held on July 19, 2001, the state trial court found Norman competent to stand trial.[6]  After this ruling, Norman's counsel withdrew the insanity plea and defense and re-entered a plea of not guilty.[7]

---

[4]St. Rec. Vol. 1 of 8, Minute Entry, 2/7/00; Bill of Information (amended 2/7/00), 1/19/00.

[5]St. Rec. Vol. 1 of 8, Minute Entry, 6/12/00; Minute Entry, 6/19/00; Motion to Change Plea, 6/19/00.

[6]St. Rec. Vol. 1 of 8, Competency Hearing Minutes, 7/19/01.

[7]St. Rec. Vol. 1 of 8, Minute Entry, 9/17/01; Motion to Withdraw Insanity Plea, 9/17/01.

Norman was tried by a jury on January 15 through 18, 2002, on the first two counts, attempted second degree murder and armed robbery.[8]  He was found not guilty of attempted second degree murder and, as to the armed robbery count, he was found "Guilty of Attempted First Degree Armed Robbery."[9]

At the scheduled sentencing hearing, the state trial court sua sponte found the verdict of "Guilty of Attempted First Degree Armed Robbery" to be defective and not a recognized crime or responsive verdict under Louisiana law.[10]  The court rescheduled trial on the armed robbery charge over defense counsel's objections.

On March 25, 2002, Norman's counsel filed a motion to quash the bill of information on grounds that a second trial would place Norman in double jeopardy.[11] The state trial court denied the motion after determining that the improper verdict did not act either as a conviction for or an acquittal on the armed robbery charge.[12]   The Louisiana Fifth Circuit denied Norman's subsequent writ application to that court.  The

---

[8]St. Rec. Vol. 2 of 8, Trial Minutes, 1/15/02; Trial Minutes (2 pages), 1/16/02; Trial Minutes, 1/17/02; Trial Minutes, 1/18/02.

[9]St. Rec. Vol. 2 of 8, Trial Minutes, 1/18/02; Verdict Form, 1/18/02; see also, Responsive Verdicts (first trial).

[10]St. Rec. Vol. 2 of 8, Minute Entry, 2/14/02.

[11]St. Rec. Vol. 2 of 8, Motion to Quash on Grounds of Double Jeopardy, 3/25/02.

[12]St. Rec. Vol. 2 of 8, Minute Entry, 3/25/02; Transcript of Motion to Quash Hearing, 3/25/02.

4

appeal court held that the confusion caused by the error on the responsive verdict list given to the jury left the verdict ambiguous.[13]  The Louisiana Supreme Court also denied Norman's writ application without reasons.[14]

Norman proceeded to a second trial before a jury on May 21 and 22, 2002.[15]  The jury reported itself deadlocked and the state trial court declared a mistrial.[16]

Prior to the start of Norman's third trial, on July 30, 2002, the State amended the second count of the bill of information back to the original charge of attempted armed robbery.[17]  The jury found Norman guilty as charged on July 31, 2002.[18]  After the verdict was received, a juror notified the court that she recognized one of the police witnesses

---

[13]St. Rec. Vol. 2 of 8, 5th Cir. Order, 02-K-419, 5/16/02.

[14]State v. Norman, 819 So.2d 285 (La. 2002) (Calogero, C.J.,  would grant writ and assigned reasons); St. Rec. Vol. 2 of 8, La. S. Ct. Order, 2002-KK-1419, 5/21/02; La. S. Ct. Writ Application, 02-KK-1419, 5/20/02; La. S. Ct. Letter, 2002-KK-1419, 5/20/02.

[15]St. Rec. Vol. 2 of 8, Trial Minutes (2 pages), 5/21/02; Trial Minutes, 5/22/02.

[16]St. Rec. Vol. 2 of 8, Trial Minutes, 5/22/02.

[17]St. Rec. Vol. 3 of 8, Trial Minutes, 7/30/02; St. Rec. Vol. 1 of 8, Bill of Information (amended 7/30/02), 1/19/00.

[18]St. Rec. Vol. 3 of 8, Trial Minutes (2 pages), 7/31/02; Jury Verdict, 7/31/02.

from a prior trial in which she sat as a juror.[19]  The court notified defense counsel, but denied counsel's subsequent motion for mistrial.[20]

The state trial court sentenced Norman on August 22, 2002, to serve 33 years in prison for attempted armed robbery.[21]  The court also denied Norman's motions for a new trial and for post-verdict judgment of acquittal.[22]

Norman later pleaded not guilty to the multiple bill filed by the State on August 7, 2002.[23]  At a hearing held on October 9, 2002, the state trial court found Norman to be a second offender and resentenced him to serve 50 years for the attempted armed robbery count.[24]  The State at that time entered a nolle prosequi as to count three of the original bill of information which had charged Norman as a felon in possession of a weapon.  The

---

[19]St. Rec. Vol. 3 of 8, Trial Minutes (2 pages), 7/31/02.

[20]St. Rec. Vol. 3 of 8, Minute Entry, 8/1/02.

[21]St. Rec. Vol. 3 of 8, Sentencing Minutes, 8/22/02.

[22]Id.; St. Rec. Vol. 3 of 8, Motion for New Trial, 8/9/02; Motion for Post Verdict Judgment of Acquittal, 8/9/02.

[23]St. Rec. Vol. 3 of 8, Minutes of Multiple Bill Hearing, 9/19/02; Multiple Bill, 8/7/02.

[24]St. Rec. Vol. 3 of 8, Minutes of Multiple Bill Hearing, 10/9/02; St. Rec. Vol. 1 of 8, Bill of Information (handwritten notation dated 10/9/02), 1/19/00.

state trial court later denied Norman's motion to reconsider the multiple offender sentence.[25]

On appeal, Norman's counsel alleged two grounds for relief:[26] (1) The trial court erred in ordering a new trial because the verdict was non-responsive and placed Norman in double jeopardy. (2) The trial court failed to follow proper procedure to correct the non-responsive verdict.  Finding no merit to these claims, the Louisiana Fifth Circuit affirmed Norman's conviction and sentence on May 28, 2003.[27]

Norman filed two pro se writ applications to the Louisiana Supreme Court on July 8, 2003, seeking review of the claims raised on appeal.[28]  Both applications were denied without reasons on January 9, 2004.[29]  His conviction became final 90 days later, on April 8, 2004, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari

---

[25]St. Rec. Vol. 3 of 8, Motion to Reconsider Sentence, 10/17/02.

[26]State v. Norman, 848 So.2d at 93, 95; St. Rec. Vol. 3 of 8, 5th Cir. Opinion, 03-KA-248, pp.4, 7, 5/28/03.

[27]Id.

[28]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 03-KO-1934, 7/8/03; La. S. Ct. Writ Application, 03-KO-1938, 7/8/03; St. Rec. Vol. 3 of 8, La. S. Ct. Letter, 2003-KO-1934, 7/8/03. Both applications were signed and postmarked in a timely fashion, within the 30 days allowed under La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

[29]State v. Norman, 862 So.2d 981, 982 (La. 2004); State v. Norman, 862 So.2d 982 (La. 2004); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2003-KO-1934, 1/9/04; La. S. Ct. Order, 2003-KO-1938, 1/9/04.

with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Thereafter, Norman filed an application for post-conviction relief in the state trial court on December 6, 2004.[30]  He raised three grounds for relief: (1) The evidence was insufficient to convict him of attempted armed robbery. (2) Trial counsel was ineffective for (a) failure to pursue the insanity plea without a hearing; (b) failure to get expert reports from psychiatrists to proffer at trial; (c) violation of Ake v. Oklahoma, 470 U.S. 68 (1985); (d) failure to ensure that he received a lunacy hearing, failing to investigate, interview witnesses and object to the State's closing argument.  (3) The state trial court failed to order a continuance of the multiple bill hearing. (3)(a) The evidence presented at the multiple bill hearing showed he was actually innocent.  (3)(b) The State failed to prove that he was represented by counsel at the prior guilty plea.  (3)(c) The State used unauthenticated documents at the multiple bill hearing.

The state trial court denied the application on December 14, 2004.[31]  The court held that the first claim, challenging the sufficiency of the evidence, was procedurally barred from review because it was an appealable issue which had not been raised on appeal.  The court further determined that the second and third claims would not be

---

[30]St. Rec. Vol. 3 of 8, Uniform Application for Post Conviction Relief, 12/6/04.

[31]St. Rec. Vol. 3 of 8, Trial Court Order, 12/14/04.

considered unless Norman refiled them along with a copy of the plea transcripts in question.

Norman filed a second application for post-conviction relief on January 7, 2005, asserting the same three claims.[32]  The state trial court again denied the application on January 11, 2005.[33]  The court held as before that the first claim, regarding the sufficiency of the evidence, was procedurally barred from review.  The court further held that the third claim, regarding the trial court's failure to grant a continuance, was also procedurally barred because it too had not been raised on appeal and could have been.  The court denied the ineffective assistance of counsel claim for lack of merit under the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Finally, the court denied the remaining claims, all related to the evidence at the multiple bill hearing, for failure to meet the burden of proof required to warrant relief.

---

[32]St. Rec. Vol. 3 of 8, Petition for Writ of Habeas Corpus and Application for Post Conviction Relief, 1/7/05.

[33]St. Rec. Vol. 3 of 8, Trial Court Order, 1/11/05.

Norman sought review in the Louisiana Fifth Circuit.[34]  The court denied the application, finding no error in the trial court's January 11, 2005, ruling.[35]

Norman thereafter filed an untimely[36] writ application with the Louisiana Supreme Court seeking review of the same post-conviction claims.[37]  The Louisiana Supreme Court denied the application without reasons on February 3, 2006.[38]

## II.   FEDERAL HABEAS PETITION

On April 13, 2006, Norman filed a petition for federal habeas corpus relief seeking relief on the following grounds:[39] (1) The retrial after the return of the non-responsive verdict violated the constitutional protections against double jeopardy. (2) The trial court failed to follow proper procedure to correct the non-responsive verdict. (3) The evidence

---

[34]St. Rec. Vol. 3 of 8, 5th Cir. Order, 05-KH-133, 2/11/05.  The filing date of the writ application, February 4, 2005, appears on the face of the order and was confirmed with the office of the clerk of the Louisiana Fifth Circuit.

[35]Id.

[36]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), petitioner had 30 days from the issuance of the state appellate court's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.  His filing was also postmarked on March 1, 2005, which was beyond the 30 day period.

[37]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 05-KH-955, 4/13/05; St. Rec. Vol. 1 of 8, La. S. Ct. Letter, 4/13/05.

[38] State ex rel. Norman v. State, 922 So.2d 1160 (La. 2006); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2005-KH-0955, 2/3/06.

[39]Rec. Doc. No. 1, Petition.

was insufficient to convict him of attempted armed robbery. (4) Trial counsel was ineffective for (a) failure to pursue the insanity plea without a hearing;  (b) failure to get expert reports from psychiatrists to proffer at trial;  (c) violation of Ake v. Oklahoma, 470 U.S. 68 (1985); (d) failure to ensure that he received a lunacy hearing, failing to investigate, interview witnesses and object to the State's closing argument. (5) The state trial court failed to order a continuance of the multiple bill hearing because the records showed a prior misdemeanor conviction was being used to support the multiple bill. (5)(a) The evidence presented at the multiple bill hearing showed he was actually innocent. (5)(b) The State failed to prove that he was represented by counsel at the prior guilty plea. (5)(c) The State used unauthenticated documents at the multiple bill hearing.

The State filed a response in opposition to the petition alleging that two of Norman's claims are procedurally barred from review, two of the claims fail to raise a federal issue, and the other claims are without merit.[40]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[40]Rec. Doc. No. 11.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[41] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Norman's petition, which, for reasons discussed below, is deemed filed in this federal court on March 28, 2006.[42]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[41]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[42]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Norman's petition was filed by the clerk of court on April 13, 2006, when the filing fee was paid.  Norman dated his signature on the petition on March 28, 2006.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The record reflects that Norman has exhausted available state court remedies. However, two of his claims are in procedural default and the remaining claims are either without merit or fail to present a federal issue reviewable under habeas corpus law for the following reasons.

IV.   <u>PROCEDURAL DEFAULT</u>

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the

merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

In his third claim before this court, Norman alleges that the evidence was insufficient to convict him of attempted armed robbery.  His fifth claim alleges that the trial court erred in failing to grant a continuance of the multiple bill hearing.  Norman first raised these claims in his state court application for post-conviction relief.  The state trial court denied these claims, finding that they were procedurally defaulted for failure to raise them on direct appeal, citing State v. Gaines, 701 So.2d 688 (La. App. 4th Cir. 1997).[43]  In Gaines, the Louisiana Supreme Court held that a claim which could have been raised on appeal, but was not, is barred from post-conviction review under La. Code Crim. P. art. 930.4.  Id. at 693-94.  Norman's subsequent writ applications to the Louisiana Fifth Circuit and the Louisiana Supreme Court were denied without reasons. The state trial court's ruling was therefore the last reasoned decision on these claims. Ylst, 501 U.S. at 802.

A.    INDEPENDENT AND ADEQUATE

The basis for the state trial court's procedural dismissal of Norman's insufficient evidence and denial of continuance claims can be found in La. Crim. Code P. art.

_____

[43]St. Rec. Vol. 3 of 8, Trial Court Order, 12/14/04; Trial Court Order, 1/11/05.

14

930.4(c), which provides for dismissal of a post-conviction application if it raises a claim which could have been raised on direct appeal. For the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Glover, 128 F.3d at 902.

La. Code Crim. P. art 930.4(c) is clearly an independent state law procedural basis for denying review of an untimely raised post-conviction claim. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000) (same). The state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. Glover, 128 F.3d at 902. The court in this case expressly ruled that Norman's claims would not be reviewed because he had the opportunity to raise them on appeal and did not.

I find, therefore, that the bar imposed by the state trial court was both independent and adequate to bar federal review of Norman's claims in this court asserting insufficient evidence and the improper denial of the continuance.

15

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Norman has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Norman from raising the claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

16

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Norman has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Norman's insufficient evidence and denial of the continuance claims are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[44]

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Norman may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a

---

[44]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

"colorable showing of factual innocence."   Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Norman does not present and the record contains nothing that suggests his actual innocence.  His claims address alleged procedural failings in the underlying criminal proceedings, not his actual innocence.  He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Norman has failed to overcome the procedural bar to his claims of insufficient evidence and denial of continuance.  The claims are procedurally barred and must be dismissed with prejudice for that reason.

V.      STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25).

VI.     DOUBLE JEOPARDY (CLAIM NO. 1)

Norman alleges that the improper responsive verdict of "guilty of attempted first

degree armed robbery" reached by the first jury placed him in double jeopardy when he

was retried.  He argues that the verdict necessarily acquitted him of the actual charge of

armed robbery, which was not chosen by the first jury.  He therefore claims that the state

trial court violated the prohibition against double jeopardy when it ordered a second, and

ultimately a third, trial on the armed robbery count, citing Mayeux v. Belt, 737 F. Supp.

957, 961 (W.D. La. 1990).  The State argues in its opposition that Louisiana Supreme

Court law allowed for the retrial where the verdict was defective or illegal.  State v.

Mayeux, 498 So.2d 701 (La. 1986).  The State additionally claims that the federal district

court's later ruling in Mayeux v. Belt, 737 F. Supp. 957 (W.D. La. 1990), is irrelevant

because the bill of information was amended before the third trial to attempted armed

robbery and that charge is the basis of his current conviction.

Norman raised this issue prior to his second trial and on direct appeal after the

third trial to the Louisiana Fifth Circuit, which provided the last reasoned decision on the

issue.  Ylst, 501 F.2d at 802.  Citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)

and related case law such as State v. Mayeux, 498 So.2d 701 (La. 1986), the Louisiana

Fifth Circuit held that the Double Jeopardy Clause was not implicated when the trial

judge threw out the defective or illegal verdict and ordered a retrial on the armed robbery

21

charge.  The Louisiana Supreme Court denied Norman's subsequent writ application without reasons.

Norman's double jeopardy claim raises a mixed question of law and fact for purposes of this court's federal habeas review.  Carlile v. Cockrell, 51 Fed. Appx. 483, 2002 WL 31319380 at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); Johnson v. Karnes, 198 F.3d 589, 593 (6th Cir. 1999) (same).  Therefore, the court must determine whether the denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent. For this reason, the district court decision in Mayeux v. Belt is not the proper focus for the court's analysis.

The Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165 (1977); North Carolina v. Pearce, 395 U.S. 711, 717 (1969); United States v. Nichols, 741 F.2d 767, 771 (5th Cir. 1984), cert. denied, 469 U.S. 1214 (1985).  The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784 (1969).

It is well established that the Double Jeopardy Clause does not preclude all retrials.  The United States Supreme Court has long resolved that the prosecution may

retry a defendant whose conviction is set aside on his own request due to an error in the proceedings.  Ball v. United States, 163 U.S. 662, 671-72 (1896).  In such circumstances, the slate has been "wiped clean" by the favorable ruling.  North Carolina v. Pearce, 395 U.S. at 721.  The exception to this rule is a situation in which the reversal prior to any retrial is based on insufficient evidence.  Burke v. United States, 437 U.S. 1 (1978).  That was not the basis for dismissal of the first jury verdict in Norman's case.  Norman's original verdict was a nullity because the crime selected by the jury from the responsive verdict list was non-existent under Louisiana law.

This court must therefore determine whether retrial was appropriate in the situation of such an error.  The fact that Norman did not request a mistrial or initially challenge the improper verdict before the state trial court acted on its own motion is immaterial to resolving the double jeopardy issue.  United States v. Tateo, 377 U.S. 463, 467-68 (1964); Houp v. Nebraska, 427 F.2d 254, 257 (1970), cert. denied, 401 U.S. 924 (1971).

In Houp v. Nebraska, the defendant was charged in a Nebraska state court with larceny of a semi-trailer adapted to haul grain.  427 F.2d at 254-55.  During the trial, the state court failed to instruct the jury that Nebraska law required that, if a verdict of guilty was reached, the jury had to declare the value of the property stolen.  The court noticed its omission after deliberations had begun, but neither party wanted the court to take further action.  The jury returned with a verdict of guilty, which was accepted by the

court, and the jury was dismissed.  Two days later, Houp challenged the verdict by motion alleging that it was invalid and he could not be held again in jeopardy for the charge.  The state trial court denied the motion.  A few days later, the state trial court sua sponte set aside the guilty verdict and ordered a retrial.

Houp's subsequent appeal to the Nebraska Supreme Court was denied on grounds that neither the Double Jeopardy Clause nor the state constitution prohibited retrial because the verdict was a legal nullity.  The court equated the verdict to a mistrial which did not violate the Double Jeopardy Clause.  Houp was later retried and again found guilty, but this time with a proper verdict.  The conviction was affirmed on appeal on the basis of sufficiency of the evidence.

Houp thereafter unsuccessfully sought federal declaratory relief from his conviction on the basis of his double jeopardy argument.  Houp, 427 F.2d at 255.  The United States Eighth Circuit Court of Appeals resolved that the nullity of the first verdict was a trial error which fell within the province of the Ball v. United States line of cases.  Houp, 427 F.2d at 256-57.  Because of the nature of the null verdict and the court's attempt to correct the error, the Eighth Circuit resolved that the Double Jeopardy Clause did not bar Houp's retrial on the same charge.  Houp, 427 F.2d at 257-58 (citing Wade v. Hunter, 336 U.S. 684 (1949) and United States v. Tateo, 377 U.S. at 467-68).

A similar result was reached by the United States Seventh Circuit in United States v. Kelava, 610 F.2d 479 (1979).  In that case, the jury returned a verdict of guilty to

24

armed imprisonment, which was not a lesser included offense of the original kidnapping charge.  Kelava, 610 F.2d at 483.  On post-trial motion, the trial court overturned the verdict for that reason and ordered a retrial.  Citing Ball v. United States and United States v. Tateo, the Eighth Circuit ruled that the Double Jeopardy Clause did not bar Kelava's retrial.

Like the defendants in Houp and Kelava, the jury returned a null verdict in Norman's first trial.  The verdict was declared null by the state trial court after it was received from the jury.  Norman does not argue with the fact that the verdict was not proper.  Faced with a nullity, the trial court moved on its own motion to invalidate the verdict and reset the matter for a new trial.  Under Ball v. United States, the correction of the error in the null verdict did not violate the Double Jeopardy Clause and left the State of Louisiana free to retry Norman.

The question then before this court is on which charge could Norman be retried.  See United States v. Kelava, 610 F.2d at 486 (while the Double Jeopardy Clause did not bar retrial, the charge to be retried is a separate issue).  Norman alleges that he could not be retried for armed robbery because he was twice placed in jeopardy on a charge on which he believes he was acquitted.  He argues that the jury's verdict of guilty on a lesser charge, albeit improper, acted to acquit him of the greater offense of armed robbery.

Through a long line of cases, the United States Supreme Court has consistently held that a jury's verdict of guilty on a lesser offense operates as an acquittal on the

greater charge and retrial on that greater charge is barred by the Double Jeopardy Clause.
Price v. Georgia, 398 U.S. 323 (1970); Blockburger v. United States, 284 U.S. 299
(1932); Brown v. Ohio, 432 U.S. 161, 164-69 (1977).  This type of implicit acquittal
must be considered in determining whether a State has violated a defendant's right to be
free from double jeopardy.  Price, 398 U.S. at 329; Garcia v. Dretke, 388 F.3d 496, 501
(5th Cir. 2004).

In the instant case, the jury in Norman's first trial was given the following possible
verdict responses:

    1)    Guilty of Armed Robbery
    2)    Guilty of Attempted Armed Burglary
    3)    Guilty of First Degree Robbery
    4)    Guilty of Attempted First Degree Armed Robbery
    5)    Guilty of Simple Robbery
    6)    Guilty of Attempted Simple Robbery
    7)    Not Guilty

(emphasis added) State Record Volume 2 of 8, Responsive Verdicts (First Trial).  Under
many circumstances, the Supreme Court's decisions in Ball v. United States and Price v.
Georgia, would allow Norman's retrial on the lesser offense selected as the verdict in the
first trial by the jury, while barring retrial on the greater offense of armed robbery.

In Norman's case, however, the jury selected an option from the responsive verdict
list which was not a proper responsive verdict.  The two underlined options in the above
list are not responsive verdicts to the charge of armed robbery in the State of Louisiana.

La. Code Crim. P. art. 814(22).[45]  In fact, the State cites nothing in its response and my research has located nothing establishing that either "attempted armed <u>burglary</u>" or "attempted first degree <u>armed</u> robbery" are identifiable crimes in Louisiana.  Thus, this court is faced with a situation different from that addressed in <u>Price</u>, since the responsive verdict chosen by the first jury in Norman's case was <u>not</u> a lesser included offense of anything.

The Supreme Court has held "the protection of the Double Jeopardy Clause by its terms applied only if there has been some event, such as an acquittal, which terminates the original jeopardy."  <u>Richardson v. United States</u>, 468 U.S. 317, 325 (1984).  The Court has further resolved that "a defendant is acquitted only when 'the ruling of a judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" (additional language in original) <u>United States v. Scott</u>, 437 U.S. 82, 97 (1978) (<u>quoting</u> <u>United States v. Marin Linen Supply Co.</u>, 430 U.S. 564, 571 (1977)).  The necessary predicate to a finding of acquittal, whether express or implied, is a determination that the fact-finder had a full opportunity to return a verdict on the charge the defendant claims to be

_____

[45]Article 814(22) provides the following responsive verdicts for armed robbery:
"Guilty.
Guilty of attempted armed robbery.
Guilty of first degree robbery.
Guilty of attempted first degree robbery.
Guilty of simple robbery.
Guilty of attempted simple robbery.
Not guilty."

precluded, and rejected it.  <u>Price</u>, 398 U.S. at 328-29; <u>Green v. United States</u>, 355 U.S. 184, 190-91 (1957).

In the instant case, the jury clearly had an opportunity to return a verdict of armed robbery.  It was among those responsive verdicts made available to it.  Thus, under <u>Price</u>, armed robbery was <u>not</u> an option for retrial.  As the records show, Norman was in fact brought to a second trial on the charge of armed robbery.  Thus, retrial on that charge placed Norman twice in jeopardy for the same charge.

The second trial, however, ended in a mistrial when the jury reported itself deadlocked.  In the context of the Double Jeopardy Clause, "a statement of hopeless deadlock is neither a statement of silence, nor a statement of acquittal."  <u>United States v. Williams</u>, 449 F.3d 635, 646 (5th Cir. 2006).  The retrial then had no impact beyond that of the first trial on Norman's jeopardy status.

Before Norman's third trial, the bill of information was amended back to the original charge in count two of attempted armed robbery so that it no longer contained any charge of armed robbery against him.  The third trial, therefore, clearly did not involve jeopardy as to an armed robbery charge.  The question remains, however, whether the attempted armed robbery charge was itself compromised by either of the first two trials for purposes of the Double Jeopardy Clause.  I find that it was not.

As an initial matter, the Supreme Court has long held that a trial ending in mistrial because of a hung jury does not implicate the Double Jeopardy Clause.  <u>Richardson v.</u>

United States, 468 U.S. at 325; Illinois v. Somerville, 410 U.S. 458 (1973); United States v. Dinitz, 424 U.S. 600 (1976).  Thus, Norman's second trial, which ended in mistrial, is not relevant to this analysis.

I return to the basic question posed by the Supreme Court's decisions in Price and Green, cited above:  whether the jury in Norman's first trial had a full opportunity to return a verdict on the charge of attempted armed robbery, and rejected it.  Price, 398 U.S. at 328-29; Green v. United States, 355 U.S. at 190-91; Garcia v. Dretke, 388 F.3d at 501.  In this case, the answer must be no.

The responsive verdict form provided to the jury in Norman's first trial did not include the option of attempted armed robbery.  The attempted armed robbery charge itself had been amended out of the bill of information before the first trial commenced. Thus, attempted armed robbery was not charged in the bill of information and it was not offered as a responsive verdict to the jury.  According to the copy of the jury charges used in the first trial, the jury may have been instructed as to the definition of attempted armed robbery prior to deliberations.[46]  However, they were not given a proper verdict form which included that charge.  Without a proper verdict form, it is not certain that the jury was given a full opportunity to select that charge and rejected it.  The record does

---

[46]St. Rec. Vol. 2 of 8, Charges on Attempted Armed Robbery (First Trial).

not demonstrate that the jury expressly or impliedly rejected attempted armed robbery as a verdict in the first trial.

Furthermore, the verdict of guilty of attempted first degree <u>armed</u> robbery is not a responsive verdict to attempted armed robbery.  La. Code Crim. P. art. 814(23).[47]  As discussed above, <u>Price</u> prohibits only retrial of the <u>greater</u> offense after a verdict on a lesser offense.  <u>See also</u>, <u>Brown v. Ohio</u>, 432 U.S. at 164-169;[48] <u>United States v. Kelava</u>, 610 F.2d at 486-489.[49]  Because the verdict reached by the jury in the first trial, guilty of attempted first degree armed robbery, was <u>not</u> a lesser included offense of attempted armed robbery, there was no jeopardy consequence.

Under <u>Price</u>, it appears that Norman received an implied acquittal on the greater armed robbery charge.  As discussed above, since the second trial was a mistrial/nullity,

_____

[47]Article 814(23) provides the following responsive verdicts for attempted armed robbery:
"Guilty.
Guilty of attempted first degree robbery.
Guilty of attempted simple robbery.
Not guilty."

[48]The <u>Brown</u> court held that the Double Jeopardy Clause prohibits successive prosecutions for a greater and lesser included offense without regard for the order or sequence in which the charges are brought.

[49]In this case, the United States Eighth Circuit held invalid the jury's verdict of armed imprisonment because it was not a valid responsive verdict to the charge of kidnapping.  The court also held that the jury rejected the verdict of simple imprisonment, which was listed as a responsive verdict to kidnapping.  The court resolved that, by choosing the verdict of armed imprisonment, there was an implied acquittal on the kidnapping charge and on the simple imprisonment charge.  The court also held that double jeopardy prohibited a retrial on new indictment for armed imprisonment.  The court's theory was that because simple imprisonment had been rejected in the first trial, it acted as an implied acquittal on any greater charge related to it, which included kidnapping and armed imprisonment.

and there was <u>no</u> armed robbery charge, either included in the amended bill of information or submitted to the jury in the third trial, Norman's implied acquittal on the armed robbery charge raises no double jeopardy concerns as to his third trial.  However, the holdings in <u>Blockburger</u> and <u>Brown</u> would prohibit prosecution on the lesser included offense if the armed robbery charge on which he was originally tried and the attempted armed robbery charge on which he was ultimately convicted are determined to be the same offense.  <u>Blockburger</u>, 284 U.S. at 304.  Under <u>Blockburger</u>, double jeopardy concerns are not raised if each crime charged requires an element of proof that the other charged crimes do not.  <u>Id</u>.; <u>United States v. Fisher</u>, 106 F.3d 622, 632 (5th Cir. 1997). The <u>Blockburger</u> test may be satisfied despite a substantial overlap in the proof offered to establish the crimes.  <u>Brown v. Ohio</u>, 432 U.S. at 166 (citing <u>Iannelli v. United States</u>, 420 U.S. 770, 785 n. 17 (1975)).

Under Louisiana law, "[t]o support a conviction of armed robbery, the state must establish beyond a reasonable doubt that the defendant took something of value from the victim or under the control of the victim, through the use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64."  <u>State v. Higgins</u>, 898 So.2d 1219, 1227 (La. 2005).  To prove the offense of attempted armed robbery, the state is required "'to prove that the defendant 1) had a <u>specific intent</u> to commit the crime of armed robbery, and 2) did an act for the purpose of and tending directly toward the commission of the crime of armed robbery.'" (emphasis added)  <u>State v. Ordodi</u>, 916 So.2d 439, 442

31

(La. App. 3rd Cir. 2005) (quoting State v. Stone, 615 So.2d 38, 40 (La. App. 3rd Cir. 1993).  To convict of attempted armed robbery in Louisiana, there must be sufficient evidence to establish the intent to take something of value, even though the act of taking need not be established.  State v. Ordodi, 916 So.2d at 442.

Thus, a conviction for attempted armed robbery could be maintained on proof that the defendant had intent to take something while armed with a dangerous weapon, even if nothing was taken.  Proof of an actual armed robbery requires a showing that something was actually taken.  Because armed robbery requires proof of facts which attempted armed robbery does not, and vice versa, the State was not prohibited from retrying Norman for attempted armed robbery.  See Marshall v. Donnelly, 1989 WL 10718 at *2 (E.D. La. Feb. 1, 1989) (Livaudais, J.) (citing North Carolina v. Pearce, 395 U.S. at 711 and Blockburger, 284 U.S. at 299), aff'd, 886 F.2d 1312 (5th Cir. 1989); see also Parker v. Bell, 2001 WL 34684723 at *2 (E.D.N.C. Nov. 13, 2001).  The prosecution for attempted armed robbery was not in violation of the Double Jeopardy Clause.

Without an event to demonstrate termination of jeopardy on that charge, the State was free to retry Norman on attempted armed robbery via the amended bill of information.  The denial of relief on the double jeopardy claim by the state courts was not contrary to, or an unreasonable application of, Supreme Court precedent.  This claim should be dismissed.

VII.    PROCEDURE TO CORRECT NON-RESPONSIVE VERDICT (CLAIM NO. 2)

Norman alleges that the state trial judge did not follow the proper procedure under Louisiana law to correct the non-responsive verdict returned after the first trial.  Norman further alleges that the court failed to comply with La. Code Crim. Pr. art. 821, which sets forth the proper procedure for modification of the verdict on a lesser included offense. He also alleges that the court failed to comply with La. Code Crim. P. art. 775 by the manner in which the state judge ordered the mistrial.  The State argues that Norman has failed to state a federal claim cognizable on habeas corpus review as to these arguments.

Norman's counsel raised this claim on direct appeal.  The Louisiana Fifth Circuit found no error in the procedure used by the trial court to rectify the incorrect verdict. This was the last reasoned opinion on the issue.  Ylst, 501 U.S. at 802.

In this claim, Norman has alleged nothing other than a failure to comply with discretionary state procedural rules.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court can consider Norman's arguments only in the context of federal constitutional law.

As a general matter, due process requires that state court proceedings be fundamentally fair. Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941). A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. Id.; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the proceedings fundamentally unfair or violate an explicit constitutional right.)

In this case, Norman first alleges that the trial judge failed to comply with La. Code Crim. P. art. 821(C), regarding motions for post-verdict judgments of acquittal, which provides:

> If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.

In this case, the trial judge made no assessment of the evidence, which would be a prerequisite to an Article 821 ruling. State v. Combs, 600 So.2d 751 (La. App. 2nd Cir. 1992) (Art. 821 is a question of legal sufficiency of the evidence); State v. Combs, 600 So.2d 751 (La. App. 2nd Cir. 1992). Furthermore, the jury did not return a verdict on a greater offense which could have been scrutinized in the manner proposed by Article 821(C). The failure to exercise this discretionary option, in light of its inapplicability, certainly did not render Norman's trial fundamentally unfair.

Norman also suggests that the trial court should have complied with the rules on granting of a mistrial under La. Code Crim. P. art. 775 when the court declared the verdict defective.  This article provides as follows:

A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.

Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

The trial court in this case did not declare a mistrial and therefore was not required to consider the provisions of Article 775.  The state trial court instead arrested the judgment based on the jury verdict as allowed by La. Code Crim. P. art. 859:

The court shall arrest the judgment only on one or more of the following grounds:
(1) The indictment is substantially defective, in that an essential averment is omitted;
(2) The offense charged is not punishable under a valid statute;
(3) The court is without jurisdiction of the case;
(4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;

35

(5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
(6) Double jeopardy, if not previously urged; or
(7) The prosecution was not timely instituted, if not previously urged.
(8) The prosecution was for a capital offense or for an offense punishable by life imprisonment, but was not instituted by a grand jury indictment.

Improper venue may not be urged by a motion in arrest of judgment.

The reason for the arrest of judgment made by the state trial court tracks the language of Article 859(5).  The state trial court found that the non-responsive verdict of guilty of first degree armed robbery was not responsive to the bill of information.[50]  Norman has failed to establish that the trial court had any procedural or constitutional duty to follow La. Code Crim. P. art. 775 when arresting the judgment pursuant to the different mechanism and standard of La. Code Crim. P. art. 859(5).  Norman has failed to demonstrate any resulting fundamental unfairness or other deprivation of due process.

Thus, in this argument Norman has failed to raise a federal constitutional claim, and the denial of relief on this claim was not otherwise contrary to, or an unreasonable application of, Supreme Court precedent.  This claim must also be dismissed.

## VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 4)

Norman alleges that his trial counsel was ineffective on four grounds: (1) Counsel failed to pursue the plea of not guilty and not guilty by reason of insanity and instead withdrew the plea without a competency hearing. (2) Counsel failed to obtain expert

---

[50]St. Rec. Vol. 5 of 8, Sentencing Transcript, pp. 6-7, 2/14/02.

witness testimony to proffer at trial before the jury. (3) Counsel's actions created a violation of <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985). (4) Counsel failed to insure that Norman received a competency hearing.  Norman argues that counsel's failings cannot be categorized as acceptable trial strategy.  He further alleges that counsel's failure to hire independent psychiatric experts failed adequately to challenge the State's case. Norman claims that counsel's withdrawal of the insanity plea without a competency hearing left him with no determination of his competence to proceed to trial.

Norman first raised these claims on post-conviction review in the state trial court. The court held that, under the standards in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and related state case law, counsel's actions were strategic in nature and part of counsel's trial tactics.  The trial court's ruling was the last reasoned decision on the issue because the Louisiana Fifth Circuit and Louisiana Supreme Court denied relief without stated reasons.  <u>Ylst</u>, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 668, which the state trial court cited.  In <u>Strickland</u>, the United States Supreme Court established a two-part test for evaluating

claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

Prior to the first trial, Norman's appointed counsel filed a motion to change Norman's plea of not guilty to one of not guilty and not guilty by reason of insanity.[51] The state trial court granted that motion on June 19, 2000.[52] After several continuances, a sanity commission was appointed at the request of Norman's later appointed counsel.[53] Finally, on July 19, 2001, the court held a competency hearing at which Norman was represented by counsel.[54]

At the hearing, the State offered to stipulate that if the sanity commission doctors were to testify, they would testify in accordance with their reports.[55] Counsel for Norman agreed to so stipulate, but he did not stipulate to the accuracy of the reports.[56] The competency determination was submitted on the reports.[57]

The competency report prepared by Dr. Craig Troxclair and Dr. Sandra M. Baltz concluded that "at the time of the evaluation, Mr. Norman had the capacity to understand

---

[51]St. Rec. Vol. 1 of 8, Motion to Change Plea, 6/19/00.

[52]St. Rec. Vol. 1 of 8, Minute Entry, 6/19/00; St. Rec. Vol. 3 of 8, Hearing Transcript, p. 5, 6/19/00.

[53]St. Rec. Vol. 1 of 8, Motion to Appoint Sanity Commission, 4/11/01; Motion to Continue, 10/23/00.

[54]St. Rec. Vol. 1of 8, Competency Hearing Minutes, 7/19/01.

[55]St. Rec. Vol. 3 of 8, Hearing Transcript, p. 5, 7/19/01.

[56]Id.

[57]Id.

the proceedings against him and had the capacity to assist in his defense."[58]  The report also reflects that, while Norman had some symptoms of depression, he was cooperative and demonstrated an understanding of his current legal situation;  that he understood the distinction between the pleas of guilty, not guilty and not guilty by reason of insanity; that he also understood his legal rights, including the language of the Miranda warnings; and that he also had the capacity to relate the facts pertaining to his actions and assist his counsel in locating witnesses for trial.[59]

The transcript of the hearing further reflects that the state trial court accepted counsel's stipulation to the report and the remainder of the discussion was held off the record.[60]  The minute entry indicates that the court made a finding that Norman was competent to stand trial and ordered continued psychiatric treatment.[61]

Two months later, on September 17, 2001, Norman's attorney filed a motion to withdraw Norman's insanity plea in open court with Norman present at the hearing.[62] The motion indicated that "[c]ounsel for the defendant has investigated and explored the possibility of an insanity defense in this cause, and the defendant as well as counsel

---

[58]Rec. Doc. No. 11, Exh. A.

[59]Id. at pp. 5-8.

[60]Id. at p. 7.

[61]St. Rec. Vol. 1 of 8, Competency Hearing Minutes, 7/19/01.

[62]St. Rec. Vol. 1 of 8, Motion to Withdraw Insanity Plea, 9/17/01;  St. Rec. Vol. 3 of 8, Hearing Transcript, p. 5, 9/17/01.

recognizes that the defense of insanity is not available to the defendant in this cause."[63]

The State did not object and the motion was granted in open court with Norman present.[64]

The record does not indicate that Norman voiced any objection to the motion or the ruling.

Contrary to Norman's suggestion, the record reflects that the state trial court did in fact hold a competency hearing on July 19, 2001, when it accepted the stipulation of the parties and the doctors' written report.  As noted above, the court also ruled that Norman was competent to proceed to trial and assist with his defense.  Competency to stand trial is a fact determination entitled to a presumption of correctness.  Miller v. Fenton, 474 U.S. 104, 113 (1985).  To show that incompetence existed, Norman would have to demonstrate to this habeas court facts "'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' as to his mental competence at the time of trial."  Dunn v. Johnson, 162 F.3d 302, 306 (5th Cir. 1998).  Norman has shown nothing to meet this burden.  The state trial court's finding of competence was a reasonable determination of the facts in light of the evidence presented to it.  See Hill, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).  Norman has not overcome the presumption of correctness afforded this finding.

---

[63]Id.

[64]St. Rec. Vol. 1 of 8, Minute Entry, 9/17/01.

This fully supported finding by the state trial court left Norman without a basis to challenge his competence.  The expert report reflected and concluded that Norman did not suffer from any mental impairment which would have affected his case.  Counsel's motion to withdraw the insanity plea, to which Norman voiced no disagreement, was based on his investigation and consideration of the competency report.  The decision was in fact reasonably based and was part of a sound strategy developed by counsel.

The law provides that, when requested, an indigent defendant is entitled to funding for psychiatric expert assistance when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 82-83 (1985).  However, an indigent defendant does not have an automatic right to expert assistance upon demand.  Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." Id.; Griffith v. Quarterman, 2006 WL 2041291 at *5 (5th Cir. Jul. 21, 2006); see also, Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687).

In Ake, the Supreme Court explained that "when the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." Ake, 470 U.S. at 80.  The competency report submitted

43

to the state trial court left no room for doubt that Norman suffered no mental illness other than mild depression, a condition that did not affect his cognitive abilities.

Norman's counsel had no basis to make a request under <u>Ake</u> for further mental evaluation since his sanity was not an issue.  <u>See</u> <u>Dunn</u>, 162 F.3d at 308 (no constitutional requirement to appoint a psychiatrist under <u>Ake</u> where defendant made no preliminary showing that his sanity would be a significant factor at trial).  Norman has presented nothing to this court, or to the state courts, which would suggest that his mental condition was at issue.

In his petition, Norman mentions two doctors whom he claims should have been called to challenge the sanity commission's findings.  Norman has never specified what testimony Dr. Deland or Dr. Sauter might offer.  Merely identifying these doctors, without further explanation or description, does not meet the burden of showing that counsel was constitutionally ineffective for failure to call these experts or failure to proffer or submit their testimony to the jury.  <u>See</u>, <u>Lockhart</u>, 506 U.S. at 372 (citing <u>Strickland</u>, 466 U.S. at 687).

Norman has not established that his counsel's performance was deficient in any way, that his trial was rendered fundamentally unfair by his counsel's performance or that his counsel's actions prejudiced him.  The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  These claims must be dismissed.

IX.   SUFFICIENCY OF THE EVIDENCE AT THE MULTIPLE BILL HEARING
      (CLAIM NOS. 5(a), 5(b) AND 5(c))

Norman alleges that the evidence used by the State at the multiple bill hearing was

insufficient to meet its burden.   He claims that the State failed to prove that he was

represented by counsel during the pleas on the predicate offenses.   Norman further argues

that the State failed to present a "perfect transcript" after his counsel showed a conflict

between the minute entry and the transcript from the predicate plea.   He also alleges that

the State failed to prove that his prior plea was knowing and voluntary.   Finally, Norman

argues that he is "actually innocent" of the crimes charged in one of the predicate

convictions.

Norman raised these issues on post-conviction review to the state trial court.   The

court determined that Norman was represented by counsel in the prior plea and that the

records were sufficient to establish that he was previously convicted of the felony

offense.   The court also held that he failed to meet his burden to prove actual innocence

in connection with the prior offense.

The well established federal standard set forth in Jackson v. Virginia, 443 U.S.

307, 319 (1979), applies to sufficiency of the evidence determinations.   Such claims

present a mixed question of law and fact.   Maes v. Thomas, 46 F.3d 979, 988 (10th Cir.

1995).   Jackson requires this court to determine whether, after identifying the elements

of the offense as defined by state substantive law and viewing the evidence in the light

most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2000); <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992); <u>Guzman v. Lensing</u>, 934 F.2d 80, 82 (5th Cir. 1991).

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. <u>State v. Shelton</u>, 621 So.2d 769 (La.1993); <u>State v. Staggers</u>, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (<u>citing</u> <u>State v. Davis</u>, 829 So.2d 554 (La. App. 5th Cir. 2002)); <u>State v. Warfield</u>, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction.  <u>State v. Staggers</u>, 2003 WL 22438958 at *6.  However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records.  <u>State v. Walker</u>, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), <u>writ denied</u>, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to

do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

<u>State v. Shelton</u>, 621 So.2d at 779 (footnotes omitted).

In the instant case, Norman was billed as a second offender, even though the bill contained allegations that he had been convicted of felonies in two prior cases. With respect to one of those cases, Norman's counsel conceded at the hearing that Norman had been charged with two felonies, theft and escape in 1998.[65] He claimed, however, that Norman agreed to enter a plea of guilty in that case and he believed he was pleading to a misdemeanor. The State countered by arguing that the records from that case showed that Norman entered the plea of guilty to felony theft between $100 and $500 and to the misdemeanor of simple escape.[66] The State argued that the multiple bill charged Norman as a second offender based only on the felony theft portion of the prior conviction in addition to the drug felony charged in the other predicate case.

---

[65]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, pp. 5-6, 10/9/02.

[66]<u>Id</u>., p. 7.

In support of the multiple bill, the State introduced the testimony of Lieutenant Patricia Adams, a latent fingerprint expert.[67]   In connection with Officer Adams's testimony, the State submitted four exhibits:[68] (1) the fingerprint card taken at the hearing;  (2) certified copies of the bill of information with fingerprints, the guilty plea form and the plea minutes dated June 11, 1998, from Case No. 98-1289;  (3) certified copies of the fingerprint card, arrest records and arrest register from Norman's arrest for theft and escape, and (4) certified copies of the bill of information, guilty plea form and plea minutes dated October 7, 1998, from Case No. 98-3737.   The state trial court admitted the documents and fingerprint records over Norman's counsel's objection to the authenticity of fingerprints on the certified copy of the fingerprint card in the third exhibit.

Lieutenant Adams testified at the hearing that the fingerprints on the certified records from Case No. 98-1289, the possession of cocaine charge, matched the prints taken from Norman in court on the day of the hearing.[69]  She also compared and matched

---

[67]Id., pp. 10-11.

[68]Id., p. 11-12; St. Rec. Vol. 8 of 8, Exhibits from Multiple Offender Hearing, Exh. 1 (fingerprints taken at the hearing), Exh. 2 (records from Case No. 98-1289), Exh. 3 (arrest records for theft and escape), Exh. 4 (records from Case No. 98-3737).

[69]Id., p. 15; St. Rec. Vol. 8 of 8, Exhibits from Multiple Offender Hearing, Exh. 1 (fingerprints taken at the hearing), Exh. 2 (records from Case No. 98-1289).

the fingerprints from that prior case with the certified fingerprint card in the arrest records related to Case No. 98-3737, the theft and escape charges.[70]

The documentary evidence also established that Norman pleaded guilty with counsel in each of the prior cases and that there was a conviction in each. The plea forms in each of the cases reflect that Johnson was advised of his constitutional rights before waiving them.[71]

Norman did not establish at the hearing, and has not here demonstrated, any procedural irregularity in the prior cases which would have required further proof, such as the need for Boykin transcripts, from the State under Louisiana law. The evidence, considered in the light most favorable to the prosecution, was sufficient for the state trial court to find that the prior felony convictions were appropriate as a basis to enhance Norman's sentence under the habitual offender laws.

Furthermore, this court cannot consider any alleged violations that may have occurred in the prior cases addressed in Norman's multiple bill. The United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in

---

[70]Id., p. 16; St. Rec. Vol. 8 of 8, Exhibits from Multiple Offender Hearing, Exh. 3 (arrest records for theft and escape).

[71]St. Rec. Vol. 8 of 8, Exhibits from Multiple Offender Hearing, Exh. 2 (records from Case No. 98-1289), Exh. 4 (records from Case No. 98-3737).

custody.  Lackawanna County District Attorney v. Coss, 532 U.S. 394, 400-401 (2001).

Therefore, Norman cannot challenge his current sentence in this court by claiming that

his prior convictions for possession of cocaine or for theft and simple escape were not

constitutionally sound.

The state courts' denial of relief on this claim was not contrary to, or an

unreasonable application of, Jackson or any other Supreme Court precedent.  Norman is

not entitled to relief on this claim.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of  John Norman for issuance

of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH**

**PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this <u>  27th  </u> day of October, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE